# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, on its
own behalf and on behalf of the
PUEBLOS of JEMEZ, SANTA ANA, and ZIA,

    -and-                                                                                 Civil No. 83-1041 JC

STATE OF NEW MEXICO, ex rel.,                            RIO JEMEZ ADJUDICATION
State Engineer,

        Plaintiffs,                                             Subfile Nos. 05T.0000.001
                                                                    (Well No. RG-45318)
                                                                         05T.0000.002
    -and-                                                                  (Well No. RG-45319)

PUEBLOS OF JEMEZ, SANTA ANA, and ZIA,

        Plaintiffs-in-Intervention,
  vs.

TOM ABOUSLEMAN, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This case is before me on (1) the Objections to the Special Master's May 11, 1998 Report by Defendant Girl Scouts of Chaparral Council, Inc., filed on June 5, 1998 *(Doc. 3736)*, and (2) the Motions by the State of New Mexico and the Plaintiffs-in-Intervention to Adopt the Special Master's Report, filed on July 2, 1998 and June 29, 1998 respectively *(Docs. 3745 and 3742)*. For the reasons contained in this opinion, I find that the objections are not well taken, and they will be overruled. I further find that the motions are well taken, and they will be granted.

## Introduction

In this adjudication of water rights in the Rio Jemez stream system, Plaintiffs-in-Intervention Pueblos of Jemez, Santa Ana, and Zia ("the Pueblos") filed objections to the quantity of the water right claimed by Defendant Chaparral Girl Scouts Council ("Chaparral") in connection with two groundwater wells (designated in the adjudication as Subfiles 05T.0000.001 - Well No. RG-45318, and 05T.0000.002 - Well No. RG-45319). Chaparral claims a water right of 17.50 acre feet per year ("*afy*") for the two wells.

After negotiations over the scope of Chaparral's water right broke down, the Pueblos filed a Motion for Summary Judgment in which they sought to limit Chaparral's water right to 5.16 *afy* for the two wells *(Doc. 3632)*. The Special Master made recommended findings and conclusions that essentially accept the Pueblos' position. Chaparral objects to these recommendations on several scores.

## Factual and Procedural Background

In the early 1960s, Chaparral purchased land in the Jemez mountains to use as a Girl Scout camp. A well was drilled in 1963 that proved inadequate to deliver sufficient water to meet the camp's needs. The second well was drilled in 1970.[1] Both have been used continuously to deliver water to the camp. The Rio Jemez Basin was declared a part of the Rio Grande Groundwater Basin by the State Engineer in 1973.

---

[1] A third "well" was constructed in an intermittent stream bed that this Court ruled was an illegal surface water diversion. Mem. Op. & Ord. (May 14, 1996).

This adjudication was filed in 1983. Chaparral claims the quantity of 17.50 *afy* based upon "declarations" it filed with the State Engineer for the two wells in 1985 (7.75 *afy* for well #1 and 9.75 *afy* for well #2).

In 1987 the State and the United States made an Offer of Judgment to Chaparral which provided in relevant part:

> c) Amount of water: The total amount of water diverted at the wells described above shall not exceed 17.50 acre feet per annum, measured at the well, provided that 12.34 acre feet shall be subject to proof of beneficial use on or before December 31, 1992, and further subject to extension of time by the State Engineer Office.

This offer was accepted by Chaparral.

In 1989 the Pueblos filed their *inter se* objections. By 1989, Chaparral had failed to put to beneficial use any of the disputed 12.34 *afy* of water for a period of 26 years since the drilling of well #1, and 19 years for well #2, although Chaparral plans to use all the water to meet anticipated future needs for the Girl Scout camp.

In 1992, Chaparral applied and received approval for a permit from the State Engineer to change the location of well #1. Another well was drilled not far away, but it delivered insufficient water also. Since then, Chaparral has applied for and received extensions of time from the State Engineer to continue to develop its groundwater wells.

The Pueblos filed the present motion for summary judgment in December 1997, and in May 1998, the Special Master filed her Report recommending that the motion be granted.

**Standard of Review**

Because the Special Master's recommended rulings are in connection with a summary judgment motion, my review is *de novo*. *See* Gottlieb v. Barry, 43 F.3d 474, 486 (10th Cir. 1994)

-3-

(*en banc*); NLRB v. Monfort, Inc., 29 F.3d 525, 528 (10th Cir. 1994); Nat'l R.R. Passenger Corp. v. Koch Ind., Inc., 701 F.2d 108, 111 (10th Cir. 1983). Under FED. R. CIV. P. 56(c), I must determine whether the Special Master correctly concluded that no genuine issue of material fact is in dispute and, if so, whether the Special Master correctly applied the substantive law. Upon careful review of the Special Master's report of May 11, 1998 and an independent review of the record, I conclude that the Special Master correctly applied the governing legal standards to the undisputed facts.

**Discussion**

**1.** *Subject-Matter Jurisdiction*. Chaparral contends that the Pueblos lack standing to challenge its water rights. It argues that the Pueblos cannot demonstrate a measurable impact on their downstream water availability because the quantity of water Chaparral claims as its right is so insignificant, which it characterizes as the equivalent of three domestic wells. Thus, it reasons, there is no case or controversy within the meaning of Article III, Section 2 of the United States Constitution.

It is undisputed that the Pueblos have water rights in the same basin and that they are downstream of Chaparral's wells. In my view in a stream adjudication it is not necessary for one user to demonstrate a measurable impact in order to challenge another user's water rights. To hold otherwise would subject *inter se* proceedings to impracticable hydrogeological proofs that seem unnecessary in a water case in an arid state. I conclude the Court has subject matter jurisdiction to consider this matter.

**2.** *New Mexico Law and the Special Master's Report*. Beneficial use of water is the benchmark of water rights in New Mexico. *See* N.M. CONST., art. XVI, § 3; N.M. STAT. ANN. 1978

§ 72-12-2 (1997 Repl. Pamp.).[2] When the State Engineer declared the basin in 1973, the effect was to require all new groundwater diversions to be permitted through the State Engineer's office. Existing or "pre-basin" wells are recognized as valid, see N.M. STAT. ANN. 1978 § 72-12-4, and pre-basin wells do not require permits unless there is some change in their location, or in the purpose for which the water is to be used, see N.M. STAT. ANN. 1978 § 72-12-7(A).

Chaparral claims its water right under what is known as the "Mendenhall doctrine," which is a relation-back doctrine in which pre-basin groundwater rights may be increased after a basin is declared. In State ex rel. State Engineer v. Mendenhall, 68 N.M. 467, 362 P.2d 993 (1961), a water user drilled a pre-basin well that proved inadequate to irrigate all his land. After the State Engineer declared the basin, the user continued to improve production in his well by further drilling, and thereby put a greater quantity of water to beneficial use irrigating his crops. The New Mexico Supreme Court held that the water right associated with the improved well related back to the date of the pre-basin well because the user had proceeded diligently and within less than two years to complete his use of the water. Id. at 475, 362 P.2d at 1001.

Chaparral relies on this doctrine to relate back to its pre-basin wells its planned future uses for the 12.34 *afy* of water that it has never put to use. The Pueblos and the State contend, and the Special Master agreed, that the doctrine cannot be stretched so far because even if Chaparral acted diligently, it has failed to put the extra water to beneficial use within a reasonable time.

The Special Master recommends that the Court grant the Pueblos' motion for summary judgment, find that Chaparral has failed to complete development of 12.34 *afy* of its groundwater

---

[2] All references in this Opinion to New Mexico Statutes Annotated, N.M. STAT. ANN. 1978, are to the 1997 Replacement Pamphlet.

rights within a reasonable span of time, and find that Chaparral's adjudicated right is 5.16 *afy*. Report at 22-23. She also recommends that the Court affirm the previously issued denial of Chaparral's Rule 11 request. Chaparral does not object to the Rule 11 recommendation.

The Special Master rules that post-1989 evidence should not be considered on any issues in the case because the period of time relevant to *inter se* challenges ends when the challenges are filed. Report at 4-7.

In her analysis, the Special Master reviews the Mendenhall case, together with its progeny. Report at 7-9. She summarizes the undisputed facts upon which she rests her recommendation that summary judgment be granted. Report at 9-10. She then proceeds with an excellent analysis of the appropriateness of summary judgment in this context. She identifies four elements of a Mendenhall claim: (1) pre-basin initiation of groundwater rights; (2) due diligence; (3) completion of the appropriation; and (4) the application of those rights to actual beneficial use within a reasonable time. There is no dispute about Chaparral's fulfillment of the first two elements (the due diligence element has been stipulated by the Pueblos for purposes of summary judgment), and according to the Special Master's analysis, there is also no genuine dispute about Chaparral's failure to fulfill the third and fourth elements.

The Special Master identifies as "ultimate facts" the questions of the legal significance of Chaparral's reasons or excuses for non-use of the water, and the fourth element of the Mendenhall doctrine, *i.e.*, whether the water had been put to beneficial use within a reasonable time. The excuses given by Chaparral for not putting its water to beneficial use are: the filing of this adjudication in 1983, the State's Offer of Judgment in 1987, the Pueblos' 1989 objections to its water rights, and the post-1989 extensions of time granted by the State Engineer's Office. Based upon the undisputed

facts, the Special Master concludes that Chaparral's asserted excuses for non-use are not legally cognizable, and that it did not apply its declared groundwater right to beneficial use within a reasonable time. Report at 14-20. The Special Master concludes that 26 and 19 years of non-use is, as a matter of law, an unreasonable span of time under Mendenhall and cannot support Chaparral's declared right to the disputed 12.34 *afy* of water. Report at 20.

Finally, the Special Master concludes that it was unnecessary to reach Chaparral's estoppel arguments because the events upon which Chaparral allegedly relied, *i.e.*, the State's permits and grants of extensions of time for changes of well locations and to put Chaparral's declared rights to beneficial use, came after Chaparral had already failed to perfect its declared groundwater rights within a reasonable period of time. "The benefits attached to a Mendenhall right had already been lost before any of the events upon which Chaparral allegedly relied." Report at 20.

**3. *Objections by Chaparral to Contents of Report*.**[3] Chaparral attacks from many angles the central premise of the Special Master's Report, *i.e.*, her treatment of the reasonable time requirement in the context of a claimed Mendenhall right. It argues first that the Special Master erred in holding that a reasonable time requirement is a separate element of a Mendenhall right. It next argues that the Special Master erred in rejecting as a matter of law its excuses for not using the water and its tolling theory. Finally, it contends the Special Master erred in holding that the period of non-use in this case is unreasonable.

Chaparral also puts forth policy and law reasons why the Special Master's report is wrong. Finally, it claims error in the Special Master's treatment of its estoppel arguments.

---

[3] The Court declines Chaparral's request to certify this case to the New Mexico Supreme Court. There is sufficient guidance in New Mexico law to decide this case without the delay and expense of certification.

*(a) Reasonable time and <u>Mendenhall</u> rights.* Chaparral argues that if due diligence is satisfied, which has been stipulated by the Pueblos, then reasonable time is presumed. It asserts that its pre-basin intent to develop the water (as evidenced by its plan), combined with its due diligence in developing the water, necessitate a finding of reasonableness. Chaparral's Obj. at 7, 9-10, 18.

The Special Master's imposition of a reasonable time element under <u>Mendenhall</u> separate from the diligence element is entirely consistent with the New Mexico Constitution, statutes, and case law. New Mexico's water laws are designed to encourage use and to discourage waste and non-use. Beneficial use of water is "the basis, the measure and the limit to the right to the use of the water." N.M. CONST., art. XVI, § 3; *see also* N.M. STAT. ANN. 1978 § 72-12-2 (same).

The notion that a pre-basin right must be put to beneficial use within a reasonable time is consistent with <u>Mendenhall</u> and its progeny. <u>Mendenhall</u> examined whether the doctrine of relation-back applies so as to protect rights that had been initiated but which had not fully vested before the basin was declared. Quoting a treatise, the Court stated:

> The rights of an appropriator of water do not become absolute until the appropriation is completed by the actual application of the water to the use designed; but *where he had pursued the work of appropriation with due diligence, and brought it to completion within a reasonable time*, as against other appropriators, his rights will relate back to the time of the commencement of the work * * *.

<u>Mendenhall</u>, 68 N.M. at 470, 362 P.2d at 996 (emphasis added). *See also* <u>State ex rel. Reynolds v. Rio Rancho Estates, Inc.</u>, 95 N.M. 560, 563, 624 P.2d 502, 505 (1981) (four years not too long where steps taken to complete well); <u>State ex rel. Martinez v. McDermett</u>, 120 N.M. 327, 901 P.2d 745 (Ct. App. 1995) (40 years of non-use unreasonable). It is also consistent with a long series of New Mexico water law cases on the doctrine of relation-back not involving pre-basin wells. *See, e.g.,* <u>State ex rel. State Engineer v. Crider</u>, 78 N.M. 312, 316, 431 P.2d 45, 49 (1967) (extending doctrine

of relation-back to municipalities whose populations and water needs may increase "within a reasonable period of time"); Rio Puerco Irrigation Co. v. Jastro, 19 N.M. 149, 153, 141 P. 874, 876 (1914) (actual appropriation within reasonable time necessary to application of doctrine of relation-back); Hagerman Irrigation Co. v. J.F. McMurry, 16 N.M. 172, 179-80 (1911) (refusing to apply relation-back of a water right where appropriation not completed for 20 years); Keeney v. Carillo, 2 N.M. 480, 493 (1883) (holding that due diligence and completion of work within reasonable time are necessary for relation-back).

*(b) Excuses for non-use and tolling arguments*. Chaparral next contends the Special Master committed error in rejecting its excuses for non-use of the full amount of its declared water right. It argues that the pendency of this adjudication which began in 1983 precluded it from placing its water to beneficial use. It also argues that in not developing its water, it relied on the State's Offer of Judgment in 1987 and upon extensions of time granted by the State. It also claims error in the Special Master's rejection of future uses in a water adjudication. Finally, it asserts that "supply problems" should excuse its failure to develop the water.

**(i) Pendency of the adjudication**. The Special Master ruled that the pendency of a stream adjudication cannot, as a matter of law, be used as an excuse not to put water to beneficial use, or to toll the reasonable time requirement. Chaparral cites State ex rel. Reynolds v. Rio Rancho Estates, Inc., 95 N.M. 560, 624 P.2d 502 (1981) for the proposition that "a party cannot lose a Mendenhall claim during the time when the right is being challenged by another party." Chaparral Obj. at 19. Chaparral argues that to allow its rights to be lost under such circumstances would be to allow plaintiffs to destroy the rights of defendants merely by filing suit against them.

In Rio Rancho Estates, the State Engineer had administratively imposed width and depth restrictions on the well a subdivision developer proposed to drill in order to continue developing its pre-basin water. In holding that the State Engineer could not impose such restrictions, the court tolled the diligence and beneficial use within a reasonable time requirements of Mendenhall. Id. at 563, 624 P.2d at 505. In the litigation arising out of those very restrictions, it makes sense to suspend the duty to develop water within a reasonable time because to have gone ahead with development would have been in defiance of the State Engineer's denial of a permit. The adjudication process itself does not justify continued failure to develop water because as a matter of law it does not interrupt development of water. The Special Master did not err in holding that the filing of this adjudication did not cause tolling.

**(ii) State's Offer of Judgment and extensions of time**. Chaparral claims it relied on the State's 1987 Offer of Judgment (with its five-year period to prove beneficial use) and the State's additional grants of extensions of time, which "cure non-use and moot out the Pueblos' objections for the time period covered" by the Offer of Judgment. Chaparral's Obj. at 13. The Special Master ruled that it would have been unreasonable for Chaparral to rely on the five-year period in the 1987 Offer of Judgment as permission to defer its use of the water, and that the extensions of time are immaterial because they occurred after 1989.

I agree that the Offer of Judgment cannot be relied upon to excuse any further non-use of water after 1987. If anything, the offer should have induced immediate water development. The Pueblos were not party to the offer, and Chaparral knew or should have known that its water rights were subject to *inter se* challenges from the Pueblos or any other defendant.

I also agree with the Special Master's ruling that post-1989 evidence is immaterial. To the extent the post-1989 evidence relates to the diligent development element of a Mendenhall right, that element has been stipulated. Also, by 1989 Chaparral's non-use of water had already persisted for an unreasonable length of time. The Special Master's resolution of this issue was not error.

As further justification for rejecting the argument that the Offer of Judgment caused tolling or excused Chaparral's non-use of water after 1987, the Special Master opined that Chaparral's future planned uses for its water are of no import in a water rights adjudication. Report at 17-18. Chaparral attacks this ruling vigorously. In the context of the discussion in the report, however, I do not interpret the Special Master to be saying that future uses can never be adjudicated. Rather, in this case, having failed to develop the water within a reasonable time, Chaparral's rights to future development have been lost, at least with the benefit of the relation-back doctrine. Therefore, I decline to decide the abstract question of the role of future uses in an adjudication.[4]

**(iii) Supply problems**. Chaparral attempts to excuse its non-use of water because of supply problems (such as engineering, site selection, and infrastructure problems). Chaparral has not made any showing that water supply is a problem beyond its control. It's own expert report details the problems with the Girl Scout camp's development of sources of water:

> [T]he hydrogeology of the camp area is such that more than enough water should be present within the boundaries of the camp to supply the projected needs of the camp. The difficulty to date with obtaining a reliable supply has probably arisen because the location of the production wells has been selected more for proximity to the

---

[4] *See, e.g.,* State ex rel. State Engineer v. Crider, 78 N.M. 312, 315-16, 431 P.2d 45, 48-49 (1967) (cities of Artesia and Roswell adjudicated water rights for future use based upon anticipated increases in population); *but see,* State ex rel. Martinez v. McDermett, 120 N.M. 327, 331, 901 P.2d 745, 749 (Ct. App. 1995) (concept of beneficial use requires "actual use for some purpose that is socially accepted as beneficial. An intended future use is not sufficient to establish beneficial use if the water is not put to actual use within a reasonable span of time.")

  developed camp than consideration for hydrogeology.  The wells were drilled in the
  area of the camp probably least likely to support reliable and productive wells.

Ex. 3 to Pueblos' Mot. Summ. J., § 4.3 at 14.

  If Chaparral's supply problems were caused by a lack of funding, New Mexico water law has never recognized lack of time or financing as valid reasons for non-use of water.  <u>Keeney v. Carillo</u>, 2 N.M. 480, 493 (1883).  If the supply problems were due to hydrogeological scarcity, the lack of an adequate supply of water can hardly excuse the development of a declared water right--just the opposite.  Without beneficial use, no water right accrues.

  ***(c) What is a reasonable time to develop water?***  Chaparral's final attack on the Special Master's reasonable time analysis is that she erred in holding that the amount of time elapsed is unreasonable.  Chaparral contends that the relevant time period is 17 years (between the digging of well #2 in 1970 and the 1987 Offer of Judgment).[5]  It argues that the Special Master's holding of unreasonableness is contrary to this Court's own decisions on forfeiture and abandonment of water rights in New Mexico.  It reasons that if non-use of water for 8 years was insufficient to raise even a presumption of abandonment of a water right, Mem. Op. & Order (Feb. 7, 1994) at 12-13, and if non-use for 16 years merely raised a rebuttable presumption of abandonment, <u>id.</u>, it is inconsistent to hold that 17 years conclusively establishes loss of a <u>Mendenhall</u> right.

---

  [5]  Although Chaparral uses the figure of 17 years, the Special Master's holding was that "the groundwater rights were initiated in 1963 and 1970, 24 and 17 years, respectively, until the Offer was signed in 1987, and 26 and 19 years, respectively, until the <u>inter se</u> objections were filed in 1989. . . .  I conclude that the 12.34 afy of rights which were initiated in 1963 and 1970 and which were not put to beneficial use by 1987/1989 were not used within a 'reasonable span of time' under <u>Mendenhall</u>, and may not be recognized in this adjudication."  Report at 18, 20.

I see the matter differently. If users who have *vested* water rights are subject to losing those rights by the law of forfeiture or abandonment if they fail to use the water for a period of years,[6] it makes sense not to allow rights to vest under a relation-back theory if the water is not used for the same or greater number of years. In other words, it is entirely rational to more easily lose a right that has never become vested than to have one taken away that once was owned.

***(d) Law and Policy are consistent with the Special Master's Report.*** Chaparral contends that the New Mexico Water Code and public policy considerations do not support the Special Master's proposed rulings. It points to N.M. STAT. ANN. 1978 § 72-1-9(B), which provides for a period of 40 years for "municipalities, counties, state universities and public utilities supplying water to municipalities or counties" to implement their water development plans. Chaparral implies that the inchoate (future) water rights granted by this statute to municipalities and other public entities would be lost if a stream adjudication were to occur during that 40-year planning period if actual use of water must be shown.

The public entities mentioned in § 72-1-9(B) have been accorded special status in New Mexico's water code, and I do not think this statute can or should be applied to private parties who have failed to develop and use their water for as long as Chaparral has. The ruling of the Special Master is not inconsistent with and will not alter regional water planning by public entities that is encouraged by this statute.

Chaparral next argues that the statutes which allow the State Engineer to grant extensions of time to put water to beneficial use, N.M. STAT. ANN. 1978 § 72-5-14 (surface water), § 72-12-8(B)

---

[6] Forfeiture of a water right occurs upon non-use of groundwater for a mere four (4) years if it persists for a year after notice from the State Engineer, N.M. STAT. ANN. 1978 § 72-12-8(A) (Repl. Pamp. 1997); abandonment of a right is presumed if water is not used in 8-16 years. Mem. Op. & Order (Feb. 7, 1994).

(groundwater), encourage the development of water plans that forecast projected water requirements into the future, and that the Special Master's report is contrary to this principle. Neither of these statutes applies to extensions of Mendenhall rights, and nothing in the Special Master's report is contrary to the principle of encouraging rational water planning by private entities. Extensions of time cannot be used to breathe new life into water rights that have failed to vest because of the passage of an unreasonable period of time.

Chaparral argues that the Special Master's report is inconsistent with the State Engineer's own Draft Guidelines for Review of Water Right Applications in the Lower Rio Grande Basin. Chaparral argues that the period of time before and after a basin is declared are only factors to be considered, and do not create a conclusive presumption of the loss of a Mendenhall claim. Thus, it reasons, time should not be the only important factor in this adjudication. The State responds that beneficial use is fundamental to any declared water right, and that Chaparral has never put 12.34 *afy* of its water to beneficial use.

The draft guidelines deal with applications associated with pre-basin water rights in the Lower Rio Grande underground water basin. They provide:

> 16. APPLICATIONS ASSOCIATED WITH PRE-BASIN WATER RIGHTS - An application involving declared water rights for a supplemental well, replacement well, change of point of diversion, place of use, or purpose of use may be filed by the applicant to develop his prebasin intent. *The State Engineer will entertain a proposal change only to the extent that beneficial use has occurred.* At the time of the action on the application, the State Engineer will define the amount of declared valid water rights recognized, if any. Specific factors taken into consideration when characterizing declared valid water rights shall include, but not to be (sic) limited to the following:
>
> > a) date of commencement of works relative to date of declaration of the basin;
> > b) capacities of diversion works and source of supply;

c) existence of a water development plan, including feasibility of projected demands, in effect prior to declaration of the basin;
d) adherence to and diligence in following that water development plan;
*e) the amount of water beneficially used;*
f) continuity of actual beneficial use; and
g) period of time since the basin was declared.

Draft Guidelines, Ex. A to Chaparral's Obj. at 12-13 (emphasis added).

The draft guidelines do not help Chaparral's position. The factor of "amount of water beneficially used" appears to be a *sine qua non* for a change in location or purpose of water. In Chaparral's case, beneficial use did not occur for an unreasonable period of time.

*(e) Estoppel arguments.*

**(i) Estoppel against the State**. Chaparral argues the State should be estopped from challenging, or from supporting the Pueblos' challenge to, its water rights because the State agreed to an Offer of Judgment in 1987 in which it recognized Chaparral's claim to the entire 17.50 *afy* if it could prove beneficial use within five years. Also, the State granted Chaparral permits in 1992 (to change the location of well #1) and in 1995 (to allow the use of well #1 as supplemental to the new well) and has consistently granted extensions of time to Chaparral to put the water to beneficial use. Chaparral argues that to allow the State to attempt to invalidate its water rights would establish a dangerous precedent for invalidating the water/property rights of hundreds of others throughout the state who are similarly situated in their good faith reliance on the State's grants of extensions of time in which to put water to beneficial use.

The Offer of Judgment represents an agreement between the State and Chaparral. The State cannot be expected to choose to litigate every issue in an adjudication, and may have, as it claims, adopted a liberal stance with respect to these wells. I see no persuasive reason to estop the State

from arguing against Chaparral's asserted Mendenhall rights when those rights are challenged in *inter se* proceedings by another party, merely because it did not choose to make an issue of it at the Offer of Judgment stage.

Even if the State were estopped from challenging Chaparral's water rights, it is the Pueblos that filed *inter se* objections to Chaparral's water rights, and any agreement between the State and Chaparral would have no effect on the Pueblos. *See* State ex rel. State Engineer v. Crider, 78 N.M. 312, 316-17, 431 P.2d 45, 49-50 (1967) (State Engineer's approval of new well and partial change in type of use of water from irrigation to domestic use held ineffective to increase water right of city when *inter se* objections made by other water users in basin).

The Special Master did not reach the estoppel argument based on the permits and extensions of time because she concluded that Chaparral had already failed to develop its water right within a reasonable time when any of the events upon Chaparral relies for its estoppel argument occurred. Report at 20. I agree that Chaparral's hoped-for water right had already failed to develop into a right and was lost by 1989. I find no merit to these estoppel arguments against the State.

**(ii) Estoppel against the Pueblos**. Chaparral also argues that the Pueblos are estopped from challenging its water right because they did not file protests when the State published its intention to grant supplemental well permits and later to extend the time for putting water to beneficial use. I find that this is insufficient basis for holding the Pueblos estopped. The administrative process of issuing permits, granting extensions, and so forth, does not supersede the adjudicatory process. Furthermore, these events occurred in 1992 and later, and by then Chaparral's Mendenhall rights had expired. The Pueblos filed their *inter se* objections at the proper time in this adjudication in 1989, and that is all that is required under the circumstances.

I find that Chaparral failed to complete development of 12.34 *afy* of its declared groundwater right within a reasonable span of time and that Chaparral's adjudicated water right for the two groundwater wells in question is 5.16 acre feet per year. This is not akin to Chaparral's losing something it owned, but rather to losing the hope of gaining something that it never owned. It is a matter of loss of opportunity to develop greater rights with an earlier priority date, not loss of the rights themselves. If Chaparral develops more water in the future, it must do so on accordance with the statutory scheme imposed when the basin was declared in 1973, with priority according to that scheme. It can no longer stretch its pre-basin rights into the future.

**NOW, THEREFORE, IT IS ORDERED** that the Objections to the Special Master's May 11, 1998 Report filed by Defendant Girl Scouts of Chaparral Council, Inc. *(Doc. 3736)*, are hereby **overruled** and that the Motions by the State of New Mexico and the Plaintiffs-in-Intervention to Adopt the Special Master's Report *(Docs. 3745 and 3742)* are hereby **granted**;

**IT IS FURTHER ORDERED** that the Special Master's May 11, 1998 Report is hereby **adopted**;

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by the Plaintiffs-in-Intervention is hereby **granted**;

**IT IS FINALLY ORDERED** that the Special Master's previously issued denial of Chaparral's Rule 11 request is hereby **affirmed**.

A Summary Judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure shall be entered.

DATED this 4th day of May, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**