IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, on its own behalf and on behalf of the PUEBLOS OF JEMEZ, SANTA ANA, and ZIA, | ) ) ) ) | 04 JUL -9 PM 4: 18<br><br>CLERK·····TAFE |
| **and** | ) ) | |
| STATE OF NEW MEXICO *ex rel.* State Engineer, Plaintiffs | ) ) ) ) | **83cv01041 MV-ACE**<br>**JEMEZ RIVER ADJUDICATION** |
| **and** | ) ) | |
| THE PUEBLOS OF JEMEZ, SANTA ANA, and ZIA, Plaintiffs-in-Intervention, | ) ) ) ) | |
| **v.** | ) ) | |
| TOM ABOUSLEMAN, *et al.*, Defendants. | ) ) ) | |

NEW MEXICO'S REVISED PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW
FOR NEW MEXICO'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to the Orders of December 29, 2003 (No. 3998) and June 22, 2004 (No.

4027), Plaintiff State of New Mexico *ex rel.* State Engineer (the State) hereby submits its

revised proposed findings of fact and conclusions of law in support of the State's June 9,

1988 Motion for Partial Summary Judgment (No. 1938) on the "future use claims"[1] of the

---

[1] The phrase "future use claims" has been used in this case to designate the category of claims made by the Pueblos under legal theories that are not in any way based on actual uses by the Pueblo. *See,* Special Master's Report filed September 14, 1988, at 11. Thus, the Special Master in his 1988 Report was considering the applicability of all legal theories except those to be quantified by actual historic and existing uses. The "historic and existing use claims" were the

*4040*

Pueblos of Jemez, Zia, and Santa Ana. Pursuant to the June 22, 2004 Order, the State's revised proposed findings and conclusions reflect revisions the State deems applicable resulting from the authorities discussed in the State's Supplemental Brief on the State's Motion for Summary Judgment Regarding the Pueblos' Future Use Claims ("State's Supplemental Br."), which the State is filing herewith.

Recent developments in the law relevant to Pueblo water rights claims do not require significant revision of the findings and conclusions proposed in the State's January 19, 1990 Proposed Findings of Fact and Conclusions of Law (No. 2195). For the Court's convenience, the State's original proposed findings and conclusions are reprinted below in plain text. The State's revisions and additional authorities that result from the authorities discussed in the State's Supplemental Brief are set out below in bold text.

**I.   Findings of Fact**

The State makes no revisions to, and provides no additional citations to the record in support of, the following findings of fact originally proposed in State's January 19, 1990 Proposed Findings of Fact and Conclusions of Law:

A.   The Pueblos of Jemez Zia and Santa Ana (Pueblos) resided and used water in the Jemez River drainage basin prior to 1540. Joint Stipulation filed February 22, 1988 (No. 1865).

B.   The primary purpose of the Pueblo grant lands is not agriculture, but the provision of a homeland for the Pueblo people. United States and Pueblos' Answers to Interrogatories filed May 26, 1988, No. 3 (b), 4 (b).

---

subject of evidentiary hearings on actual uses, and a separate Special Master's Report filed October 1, 1991 (No. 2291) (1991 Report).

C.     The primary purposes for the United States' lands held in trust for the Pueblos are as recited in the statutes setting aside the lands none of which mention agriculture as a purpose. Affidavit of Dr. Stan Hordes, attached to certain defendants' Motion for Partial Summary Judgment.

D.     The Pueblos purportedly[2] received grants of land from the King of Spain, which grants were later confirmed by the United States Congress. Act of December 22, 1858, 11 Stat. 374; Act of February 9, 1869, 15 Stat. 88; Act of August 13, 1949, 63 Stat. 608.

E.     The Pueblos came under United States' sovereignty pursuant to the Treaty of Guadalupe Hidalgo, 9 Stat. 922 (February 2, 1848).

F.     At no point did the United States own these Pueblo lands. *See* United States and Pueblos' Answers to Interrogatories filed May 26, 1988, No. 1(C) (2).

No treaty exists between these Pueblos and the United States. U.S. Statutes, *passim.*

## II.     Conclusions of Law

A.     Partial summary judgment is appropriate in this case to obtain rulings on questions of law which will materially advance the determination of the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also* United States and Pueblos' Answers to Interrogatories filed May 26, 1988, No. 2 (c), 3 (c).

**1.     The record taken as a whole could not lead a rational trier of fact to find for the United States and Pueblos regarding their claims to future use water rights under any legal theory. There thus is no genuine issue as to any fact material to those future use water right claims. *Citizens Progressive Alliance v. BIA*,**

---

[2] Many scholars believe that the grant documents are forgeries. That question is not at issue here.

241 F. Supp. 2d 1342, 1352-53 (D.N.M. 2002) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

      2.     Whether the Pueblos are entitled to a future use water right is a purely legal question that can be determined without the development of a factual record. *Cf. United States v. Braren*, 338 F.3d 971, 976 (9th Cir. 2003) (dispute over whether tribes had any right to water presented purely legal issue that was separate from factual proceedings in separate adjudication suit).

      3.     Movants are entitled to partial summary judgment as a matter of law on the claims of the United States and Pueblos to future use water rights. *Jones v. Denver Post Corp.*, 203 F.3d 748, 751 (10th Cir. 2000); Fed. R. Civ. P. 56(c), (d).

      4.     Partial summary judgment on the claims of the United States and Pueblos to future use water rights will narrow the scope of trial and speed up the litigation of this case by clarifying the proper standard under which the water right claims of the United States and Pueblos must be quantified, and by identifying the evidentiary hearings that will be necessary to apply that standard. *Alberty-Velez v. Corporacion de Puerto Rico para la Difusion Publica*, 242 F.3d 418, 422 (1st Cir. 2001) (partial summary judgment narrows the scope of trial and serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact); State's Supplemental Br. at 6-7.

      B.     The appropriate measure for Pueblo Indian water rights with an aboriginal ("time immemorial") priority is the amount of water actually used on or before February 2, 1848, the date of the Treaty of Guadalupe Hidalgo. *State ex rel. Reynolds v. Aamodt*,

618 F. Supp. 993, 1010 (D.N.M. 1985); **Treaty of Guadalupe Hidalgo, executed February 2, 1848, Arts. VIII, IX, XXIII; State's Supplemental Br. at 10, n.12, and references therein**. No court which has adjudicated a water right based on aboriginal water use has ever decreed more water than was actually used in the aboriginal period. *United States v. Adair*, 723 F.2d 1394, 1415 (9th Cir. 1983); *see also Montana ex rel. Greely v. Confederated Salish and Kootenai Tribes of the Flathead Reservation*, 712 P.2d 754, 764-65 (Mont. 1985).

      C.      The United States and Pueblos arguments based on "aboriginal title" do not support an award of more water with a time immemorial priority than was in actual use at the date of the Treaty **of Guadalupe Hidalgo**.

      1.      "Aboriginal title" is a right of use and occupancy only. *Tee-Hit-Ton Indians v. United States*, 348 U.S. 272, 279 (1955); **Zuni Indian Tribe of New Mexico v. United States, 16 Cl. Ct. 670, 671-72 (1989); Uintah Ute Indians of Utah v. United States, 28 Fed. Cl. 768, 784-85 (1993); Confederated Tribes of Chehalis Indian Reservation v. Washington, 96 F.3d 334, 341-42 (9th Cir. 1996);** *see also Northwestern Bands of Shoshone Indians v. United States*, 324 U.S. 335, 339 (1945); *Hynes v. Grimes Packing Co.*, 337 U.S. 86, 103 (1949); *Sekaquaptewa v. MacDonald*, 448 F. Supp. 1183, 1191 (D. Ariz. 1978). As such, it cannot give rise to a perfected, vested property right such as a water right. ***Zuni*, 16 Cl. Ct. at 671, 672 (aboriginal title does not vest the titleholder with a property right; the taking by the United States of unrecognized aboriginal title is not compensable under the Fifth Amendment); *Uintah*, 28 Fed. Cl. at 784, 785.**

2.    An award of water rights based on the use and occupancy right of "aboriginal title," if appropriate at all, must be limited to the amount of water actually used. *See State ex rel. Reynolds v. Aamodt*, 618 F. Supp. 993, 1010 (D.N.M. 1985); *Aamodt* **January 31, 2001 Memorandum Opinion and Order;** *See* **State's Supplemental Br. at 17, 21.**

D.    Spanish law does not support an award of an expanding right, with a time immemorial priority, to the Pueblo's future uses.

1.    No inchoate, expanding Pueblo Indian right to possible future uses of water survived into the period of American sovereignty following the Treaty of Guadalupe Hidalgo, as the Treaty does not protect inchoate future rights. *State ex rel. Martinez v. City of Las Vegas*, **2004-NMSC-009, ¶ 39, 89 P.3d 47, 60 (N.M. 2004) (Treaty of Guadalupe Hidalgo did not protect inchoate rights; expanding quality of the non-Indian "pueblo water right" claimed by municipality, being inchoate, was not guaranteed by the Treaty);** *see also Bond v. Unknown Heirs of Barela*, 229 U.S. 488, 493 (1913); *Ainsa v. United States*, 161 U.S. 208, 234 (1896); *Dent v. Emmeger*, 81 U.S. (14 Wall.) 308, 312-13 (1871); *Amaya v. Stanolind Oil & Gas Co.*, 158 F.2d 554, 557-58 (5th Cir. 1946) (Treaty of Guadalupe Hidalgo did not guarantee either the specific aspects of property rights established by Spanish or Mexican law or the permanent and continued existence of such rights).

a.    **The Spanish and Mexican system of** *Repartimiento*, **which allowed for a limited "expanding" right by protecting surrounding users, did not survive into the American period following the Treaty of Guadalupe Hidalgo.**

-6-

U.S. Response Br. on Historic and Existing Use Claims, at 8; State's July 1, 2004
Reply Br. on Historic and Existing Use Claims, at 8.

        b.     Without the protections afforded to non-Indian water
users by the the Spanish and Mexican system of *Repartimiento*, allowing an
expanding water right in the Pueblos to survive after the Treaty of Guadalupe
Hidalgo would be contrary to the Treaty's express protections of the property rights
of non-Indians in the acquired territories. *City of Las Vegas* at ¶ 36, 89 P.3d at 59
(expanding quality of the non-Indian "pueblo water right" claimed by municipality
unacceptable because it envisions that other water users will lose their use of water
as the municipality's uses expand); *see also* State's Supplemental Br. at 10, n.12, and
references therein.

        c.     Thus, the Pueblos are not entitled to a Spanish-law-based
expanding water right for water uses after February 2, 1848.

        2.     If an expanding water right under Spanish or Mexican law were to
be held to survive into the American period under the Treaty of Guadalupe Hidalgo, then
the full range of Spanish law concerning the quantification of water rights should also
apply to these Pueblos' water rights. Under Spanish law, the award of water rights was
governed by "need;" it was determined by customary and actual use; that is: "the amount
of water necessary to grow crops for basic life support in fields under cultivation" and
any expansion of water rights had to be done with as "little injury to others as possible."
*State ex rel. Reynolds v. Aamodt*, 618 F. Supp. 993, 998-99 (D.N.M. 1985). **In addition,
no right could expand under Spanish and Mexican law at the expense of other
peoples' domestic and sanitary water needs.** *Id.* at 998 ("Common uses of water

were subject to two overriding servitudes in favor of all individuals to meet domestic and sanitary needs."); *see also* **State's July 1, 2004 Reply Br. on Historic and Existing Use Claims, at 7.** The Pueblos' claims in this case do not conform to these requirements. *See* United States and Pueblos answers to Interrogatories filed May 26, 1988, No. 4 (c); **State's Supplemental Br., at 10-11, Table II.**

E.     In the absence of a reservation of land to these Pueblos by the United States, the federal reserved right doctrine under *Winters v United States,* 207 U.S. 564 (1908), does not apply. Memorandum Opinion and Order entered in *Aamodt,* June 10, 1983 at 10; *State ex rel. Martinez v. Kerr-Mcgee Corp.,* **120 N.M. 118, 126-27, 898 P.2d 1256, 1264-65 (1995).**

1.     The standard of "practicably irrigable acreage" (PIA) as set out in *Arizona v. California,* 373 U.S. 546, 600-01 (1963) is a measure of water rights implicitly reserved by the federal government upon the creation of a reservation. *Winters v. United States,* 207 U.S. 564 (1908). Where, as here, there has been no federal reservation of land within the boundaries of the Pueblo land grants, the court may not impute a reservation in order to apply the standard. ***State ex rel. Martinez v. Kerr-Mcgee Corp.,*** **120 N.M. 118, 126-27, 898 P.2d 1256, 1264-65 (1995).**

2.     **In the absence of a reservation for agricultural purposes,** no federal policy of applying a PIA standard to measure Indian water rights exists. Rather, the federal policy with respect to the quantification of Indian water rights has been expressed by the United States Supreme Court as: "so much [water] as, but no more than, is necessary to provide the Indians with a livelihood — that is to say, a moderate

-8-

living." *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 686 (1979).

       3.     If a "reservation" either by the United States or the Pueblos were imputed from some federal act, an award of water rights to the Pueblos under the *Winters* doctrine would be limited to the amount needed to fulfill the primary purpose of the "reservation." *Cappaert v. United States*, 426 U.S. 128, 141 (1976); *United States v. New Mexico*, 438 U.S. 696, 702 (1978); ***In the Matter of the Determination of the Rights to the Use of the Surface Waters of the Yakima River Drainage Basin*, 850 P.2d 1306, 1316 (1993); *Alaska v. Babbitt*, 72 F.3d 698, 703 (9th Cir. 1995).**

       a.     The PIA standard, or any standard tied to the irrigability of land, is only appropriate where the primary purpose of a reservation is agricultural. *Cappaert v. United States*, 426 U.S. 128, 139-41 (1976). *See also Arizona v. California*, 373 U.S. 546, 600-01 (1963).

       b.     Because the primary purpose of these Pueblos is <u>not</u> agriculture, Findings of Fact B and C, *supra*, there is no legal basis for imposing the PIA standard, or any standard which is tied to the irrigability of lands. *See State of Wyoming v. United States Shoshone and Northern Arapaho Tribe*, 753 P.2d 76 (Wyo. 1988) (Where the court applied the PIA standard only upon an evidence-based finding that the primary purpose of the reservation was agricultural).

       c.     Rather, as the admitted primary purpose of the Pueblo grant lands is a homeland for the Pueblo people, United States' and Pueblos' Answers to Interrogatories filed May 26, 1988 No. 4 (c), a standard for the quantification of reserved water rights, assuming such rights are found to exist, should be tied directly to the needs

of the people   that is, "so much as, but no more than, is necessary to provide the Indians with a livelihood – that is to say, a moderate living." *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 686 (1979).

        d.     Water rights on Pueblo trust land as distinct from Pueblo grant land should be quantified in accordance with the primary purpose for the reservation of those lands as recited in the reserving statutes. *Cappaert v. United States*, 426 U.S. 128, 139-41 (1976); ***In the Matter of the Determination of the Rights to the Use of the Surface Waters of the Yakima River Drainage Basin*, 850 P.2d 1306, 1316 (1993); *Alaska v. Babbitt*, 72 F.3d 698, 703 (9th Cir. 1995).**

        F.     The Pueblos do not have nor have they ever held undisturbed aboriginal sovereignty over their lands and therefore cannot claim water rights based on such sovereignty.

        1.     Spanish and Mexican law did not recognize any sovereignty in the Pueblos. Recopilacion de los Reinos de la Indias (1680). Book III, Law I (the King has full sovereignty over the Indies and cannot alienate that sovereignty). *State ex rel. Reynolds v. Aamodt*, 618 F. Supp. 993, 997 (D.N.M. 1985).

        2.     In the United States period "[t]he Pueblos have not been deemed to be sovereign states." *State ex rel. Reynolds v. Aamodt*, 618 F. Supp. 993, 1005 (D.N.M. 1985).

        3.     In the absence of a treaty wherein the Pueblos reserved rights, the doctrine under *United States v. Winans*, 198 U.S. 371 (1905), which relies upon an Indian reservation of rights not ceded by treaty, does not apply.

4.      Even if an aboriginal sovereignty analysis did apply, it would not result in a right to enough water for "any uses of such lands and appurtenances that the Pueblos deem appropriate, including but not limited to, religious, municipal, industrial, domestic, stockwatering, irrigation, garden and industrial uses," as the Pueblos have claimed in this lawsuit. United States' and Pueblos' Answers to Interrogatories filed May 27, 1988, No. 4 (c).

a.      If the Pueblos were determined to have retained sovereignty, the proper way to measure Pueblo water rights would be by equitable apportionment. *Colorado v. New Mexico*, 459 U.S. 176, 183 (1982), which would not result in the award claimed by the United States and Pueblos.

b.      Under *United States v. Winans*, 198 U.S. 371 (1905), an Indian reserved water right would be limited by the amount needed to achieve a "moderate living" standard. *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 686 (1979); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. State of Wisconsin*, 740 F.Supp. 1400, 1417-18 (W.D.Wis. 1990).

G.      The Pueblos do not have a riparian right to water because riparian rights do not arise in the West under federal common law within a prior sovereigns' land grant. *Boquillas Land and Cattle Co. v. Curtis*, 213 U.S. 339, 344-47 (1909).

1.      *Winters v. United States*, 207 U.S. 564 (1908), does not recognize riparian water rights, as is clear from the fact that *Winters* rights can be reserved only from unappropriated waters available at the time of the reservation, and carry a priority date of the date of the reservation. *Cappaert v. United States*, 426 U.S. 128, 138 (1976);

-11-

*In Re General Adjudication of All Rights to Use Water in the Gila River System,* 35
P.3d 68, 71-72 (Ariz. 2001); *Alaska v. Babbitt,* 72 F.3d 698, 703 (9th Cir. 1995).

        2.     Even if the Pueblos were held to have riparian rights, those rights
would be small or non-existent under riparian law, which states that a water rights holder
may not take from a river if the taking impairs downstream users. Clark, 1 *Waters and
Water Rights,* §53.5 at 361 (1978). In the arid west, a taking without impairment is
virtually impossible, which is why both federal and state law have rejected the riparian
doctrine for the west. ***State ex rel. Martinez v. City of Las Vegas,* 2004-NMSC-009, ¶
28, 89 P.3d 47, 56-57 (N.M. 2004) (common law doctrine of riparian rights was not
suited to an arid region and was never recognized by the people of New Mexico)
(quoting *Snow v. Abalos,* 18 N.M. 681, 693, 140 P. 1044, 1048 (1914)); *Diamond Bar
Cattle Co. v. United States,* 168 F. 3d 1209, 1215 (10th Cir. 1999) (federal law has at
least since 1866 recognized validity of local customs, laws, and court decisions
regarding the appropriation of water) (quoting *United States v. Rio Grande
Irrigation Co.,* 174 U.S. 690, 704 (1899).**

        H.     Following the Treaty of Guadalupe Hildalgo, the Pueblos, like any other
appropriator, could appropriate water by putting it to beneficial use with a priority date of
that use. This is true as a matter of federal common law, which in the area of water rights
follows state law. *Wilson v. Omaha Indian Tribe,* 442 U.S. 653 (1979).

Respectfully submitted.

Gregory C. Ridgley
John E. Stroud
Special Assistant Attorneys General
Office of the State Engineer
P.O. Box 25102
Santa Fe, NM 87504-5102
(505) 827-6150
Attorneys for the State of New Mexico
*ex rel.* State Engineer

CERTIFICATE OF SERVICE

I hereby certify that a copy of the Revised Proposed Findings Of Fact And Conclusions Of Law
For New Mexico's Motion For Partial Summary Judgment was mailed on July 9, 2004, to the
following:

Larry C. White, Esq.
P.O. Box 2248
Santa Fe, NM 87504-2248

David W. Harder, Esq.
U.S. Department of Justice
Environment Division,
Indian Resources Section
999 18th Street
North Tower, Suite 945
Denver, CO 80202

Lester Taylor, Esq.
Susan Jordan, Esq.
Nordhaus Law Firm
405 Dr. Martin Luther King, Jr. Ave. NE
Albuquerque, NM 87102

David R. Yepa
Roth, Van Amberg, Rogers, Ortiz
& Yepa, LLP
Counsel for Jemez Pueblo
1201 Lomas Boulevard N.W. Suite C
Albuquerque, NM 87102

David Mielke, Esq.
Sonosky, Chambers, Sachse,
Endreson, & Mielke
500 Marquette Ave NW, Suite 700
Albuquerque, NM 87102-5335

Richard W. Hughes, Esq.
Rothstein, Donatelli, Hughes,
Dahlstrom & Schoenburg
P.O. Box 8180
Santa Fe, NM 87504-81

Gregory C. Ridgley