UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, on its own
behalf and on behalf of the PUEBLOS OF
JEMEZ, SANTA ANA, and ZIA,

and

STATE OF NEW MEXICO, *ex rel.*
STATE ENGINEER,

      Plaintiffs,

and

PUEBLOS OF JEMEZ, ZIA and SANTA ANA,

      Plaintiffs-in-Intervention,

      v.

TOM ABOUSLEMAN, et al.,

      Defendants.

No. CIV 83-1041 KWR/JHR
<u>**JEMEZ RIVER
ADJUDICATION**</u>

**PUEBLO OF SANTA ANA'S RESPONSE TO EXPEDITED JOINT MOTION
TO AMEND SCHEDULING ORDER (DOC. 4453, filed 02/10/22)**

      The State of New Mexico, the United States, the Pueblos of Jemez and Zia and the Jemez River Basin Water Users Coalition ("Coalition") have jointly moved the Court to amend the Scheduling Order that was entered herein on October 28, 2021 (Doc. 4452), by extending the stay of this case and the commencement of briefing by approximately three months, and granting the State and the Coalition two months to file responsive briefs instead of the one month allowed in the Scheduling Order.  The Pueblo of Santa Ana opposes that motion, and affirmatively states its belief, which will be explained below, that it is and will continue to be prejudiced by the

1

continued delays in resuming this litigation.

As the Court is aware, this case was stayed for about five years, from 2007 until early in 2012, while the parties (including Santa Ana) vigorously pursued settlement negotiations. Those negotiations broke down in March, 2012, and the parties returned to litigation. They identified five sets of legal issues that they contended, and the Court agreed, had to be decided by the Court before the Pueblos' water rights could be determined by the Court, and extensive briefing ensued on those issues. With respect to Issues Nos. 1 and 2, addressing the questions, essentially, whether the Pueblos had aboriginal water rights, or whether those rights had been extinguished by any action of the Spanish, Mexican or American governments, the Court held a three day evidentiary hearing in early 2014, at which two opposing experts testified on the laws of Spain and Mexico regarding the Pueblos' water rights. Following that hearing and the submission of further briefs, Magistrate Judge William Lynch (who had presided at the hearing) issued his recommended disposition, in which he proposed that the Court find that the Pueblos' aboriginal water rights (which he concluded had existed prior to the arrival of the Spanish) had been completely extinguished by the extension of Spanish sovereignty over the territory. District Judge Martha Vázquez filed her Memorandum Opinion and Order, adopting Magistrate Judge Lynch's proposed disposition in its entirety, on September 30, 2017 (Doc. 4397).

The Pueblos and the United States asked the Court to certify that Opinion and Order for interlocutory appeal. The Court granted those motions, the 10th Circuit Court of Appeals accepted the appeal, and on September 29, 2020, that court issued its opinion reversing this Court's Memorandum Opinion and Order, and holding that only an affirmative action, clearly adverse to the Indian right of occupancy and intended to extinguish tribal rights, could be found to have extinguished Indian aboriginal water rights, and finding that the record in this case

revealed no such action during the Spanish territorial regime in New Mexico. *United States v. Abouselman* [*sic[1]*], 976 F.3d 1146 (2020).

Upon the case's return to this Court, thus, what remained was for this Court to decide whether, on the basis of the record before it and in light of the 10th Circuit ruling, there was any action of the Mexican government, or of the United States government, that could be said to have extinguished the Pueblos' aboriginal water rights. (The Court could also consider Issue No. 2, which essentially raises the question whether the United States has, in effect, "recognized" or acknowledged in some way the Pueblos' aboriginal water rights, as suggested by the decision in *United States v. Winans*, 198 U.S. 371 (1905).) If no action by Mexico or the United States could be identified as amounting to an extinguishment of the Pueblos' aboriginal water rights, such that those rights had to be deemed to remain intact, then the Court would presumably move to Issue No. 3, which asks how those rights are to be quantified. That issue was extensively briefed in 2013, but the Court might want further briefing. But once Issue No. 3 is decided, the case would be ready to move toward trials of what water rights each Pueblo has.[2]

But getting there now looks like a remote possibility. In late 2017, Jemez and Zia, the State, the United States and the Coalition agreed to resume settlement talks, essentially picking up where those talks left off in 2012. Santa Ana's Tribal Council declined the invitation to join those talks, however. While Jemez and Zia Pueblos seem satisfied with the water rights that they would be allocated under the terms of the settlement,[3] Santa Ana was allowed only a very small

---

[1] Early in the course of the appeal, for reasons that are unclear, the Court of Appeals began using a misspelling of the name of the first-named non-Indian defendant, and that was never corrected.
[2] Issue No. 4 asks whether the Pueblos have *Winters* reserved rights appurtenant to their trust lands, and how those rights are to be measured. That issue was also fully briefed, and probably could be decided by the Court based on the briefs.
[3] Another factor that presumably informs the positions of Jemez and Zia in this situation, and inclines them not to support further pursuit of litigation of their aboriginal water rights, is that, unbeknownst to Santa Ana, while the appeal to the 10th Circuit Court of Appeals was pending,

allocation of water, far less than it felt it was entitled to. But because there was no definitive ruling on the water rights of the Pueblos, Santa Ana had no leverage to enable it to bargain for a higher allocation. That was the basis for its decision to continue to pursue the litigation, in hopes that ultimately favorable rulings on the issues of the existence and quantification of aboriginal water rights would enable it to return to the settlement negotiations, and insist on better settlement terms. (And to be sure, should the rulings on Pueblo aboriginal rights not be favorable to Santa Ana, it would be in no worse shape than it is now.)

But the determination of the other parties to prolong the time before any such rulings could be reached effectively dooms Santa Ana's hopes. It has now been well over a year since the 10th Circuit gave emphatic and clear direction as to the circumstances in which aboriginal water rights could be found to have been extinguished, and observed that no such circumstances were shown to have existed during the Spanish territorial regime, but no progress has been made toward finishing the determination of Issues Nos. 1 and 2, and now further delays are demanded by the settling parties. It is interesting that the reasons set forth in the Joint Motion for a further three-month extension of briefing are similar to the reasons the same parties gave in their filings in response to the Court's order entered herein on June 2, 2021 (Doc. 4441), directing the parties to file proposed scheduling orders. Once again, the parties to the settlement talks claim that they

---

the State, the Coalition and Jemez and Zia entered into a rather remarkable Memorandum of Understanding in which they agreed that "the pending litigation before this Court, the Tenth Circuit, or the United States Supreme Court, regarding the nature and extent of the two Pueblos' water rights, shall not affect the negotiated terms of any settlement agreement or any legislation to implement the settlement agreement." State of New Mexico's Request for Order Staying Proceedings and Setting Status Conference (Doc. 4446, filed 07/23/21), at 10. In short, those two Pueblos have agreed to relinquish any benefits or leverage they might have enjoyed in the settlement negotiations by virtue of a judicial determination of their rights. It is not even clear to Santa Ana that any case or controversy remains as between the State and the non-Indians and those two Pueblos, assuming that a settlement will ultimately be reached. (The United States was not a party to this MOU, so it might still have some interest in pursuing the Pueblos' rights as their trustee.) Santa Ana, of course, would never have agreed to such extraordinary terms.

are near finalizing a settlement, and that it would be an unreasonable strain on their resources to have to engage in briefing at the same time they are trying to wrap up the settlement. And undoubtedly, if no settlement is reached by the June 1 stay deadline that the Joint Motion seeks, the Court will be presented with yet another motion for a further stay, making essentially the same arguments.

What is particularly odd about these contentions is that all of the moving parties continued their settlement talks while this case was on appeal to the 10th Circuit Court of Appeals, a proceeding that must have required the engagement of far more resources than further briefing in this Court would. Moreover, the Pueblos of Jemez and Zia know that Santa Ana will bear the laboring oar on the Pueblos' brief, and it is difficult to believe that the United States Department of Justice cannot manage to engage in occasional settlement talks while preparing a brief. The arguments that can confidently be expected to be made by the Coalition and the State are ones that they have made many times before, in this case and others. It is thus difficult to accept the claims that to continue in accordance with this Court's scheduling order of October 28, 2021, will unduly impose on the resources of any of the moving parties.

As explained above, however, the continuing delays that the movants seek will effectively prevent Santa Ana from being able to rejoin the settlement talks with any leverage to bargain for better terms. That may be what the parties prefer. But Santa Ana would note that should the moving parties ultimately reach a settlement, while the litigation is stayed, and should that settlement obtain congressional approval, despite Santa Ana's absence, and should, thereafter, this Court rule that the Pueblos do indeed have intact aboriginal water rights, that include (as some courts have ruled) the right to water for future needs, Santa Ana may have no alternative but to exercise its priority as against the upstream non-Indian users, to assure the

delivery of the water to which it is entitled.  That possibility, however unlikely it might seem, could frustrate much of the purpose of the settlement, at least for the non-Indians.

 Santa Ana submits that the better, and fairer, course, would be to let the litigation proceed (without in any way preventing the other parties from continuing to work on their settlement), with the hope that dispositive rulings on at least some of the remaining issues could be reached before the settlement is finally concluded.  Santa Ana would only qualify that by noting that the filing of this motion (and the fact that Santa Ana was informed that it was to be filed nearly two weeks earlier) has already prejudiced Santa Ana's ability to have its opening brief by March 1, since the likelihood that the motion would be granted resulted in uncertainty on the part of Santa Ana's counsel whether to commence work on the brief in earnest.  For that reason, Santa Ana would agree to a one-month extension of the dates set in the October 28, 2021, Scheduling Order.

## CONCLUSION

 For the foregoing reasons, the Pueblo of Santa Ana respectively urges the Court to deny the Joint Motion, and to grant only a one-month extension of the stay and briefing dates set forth in the Scheduling Order (Doc. 4453) filed herein on October 28, 2021.

  Respectfully Submitted,

  /s/ Richard W. Hughes
  Richard W. Hughes
  Reed C. Bienvenu
  Rothstein Donatelli LLP
  Post Office Box 8180
  Santa Fe, New Mexico 87504
  505-988-8004
  rwhughes@rothsteinlaw.com
  rbienvenu@rothsteinlaw.com

## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that on the 11th day of February, 2022, the foregoing Response to Expedited Joint Motion was filed electronically through the CM/ECF system, which caused CM/ECF participants to be served by electronic means, as is more fully reflected on the Notice of Electronic filing.

     I further certify that on the 11th day of February, 2022, I caused the foregoing non-CM/ECF participants to be served with said document by first class mail, postage prepaid, addressed as follows:

**Gilbert Sandoval**  
P.O. Box 61  
Jemez Springs, NM 787125

**Mary Ann Joca**  
U.S. Dept. of Agriculture  
Office of General Counsel  
P.O. Box 586  
Albuquerque, N.M.

**Ernest E. Valdez**  
Valdez Law Firm  
P.O. Box 2385  
Santa Fe, NM 87504

**James Curry**  
P.O. Box 13073  
Albuquerque, NM 87192-3073

**Nacimiento Community Ditch Association**  
c/o Anthony M. Jacquez  
651 Fairway Loop  
Los Ranchos, NM 87124

**Pamela Williams**  
Indian Affairs Division  
U.S. Dept. of the Interior  
1849 C. Street, N.W., Room 6456  
Washington, D.C. 20240

     s/ Richard W. Hughes  
     Richard W. Hughes